THE TOWN OF GUTTENBERG, IN THE COUNTY OF HUD-
SON, PLAINTIFF AND PLAINTIFF IN ERROR, v.
CHARLES VASSEL ET AL., DEFENDANTS AND DE-
FENDANTS IN ERROR.

Submitted July 9, 1906—Decided March 4, 1907.

A bond was given with condition that a contractor should execute a
certain public work for a certain price, to be paid eighty per cent.
of the amount for the work done, as certified to by an engineer,
at different periods as the work progressed, and the remainder of
the price in thirty days after the completion of the work. The
contractor's agreement with the town provided that upon notice
for certain causes the contractor should discontinue the work
and the town should finish it, the expenses to be paid out of the
moneys due or to become due to the contractor. After the con-
tractor, upon notice, had discontinued the work, the town, having
already paid him eighty per cent. of the amount of certified work
done, paid him $770 in addition. The bond of the sureties con-
tained the clause that it should not be rendered void by reason of
any payment made to the contractor in advance or contrary to
the terms of the contract, or by reason of any other thing that
may be done by the parties in connection with the fulfillment of
the contract. *Held*, that this clause preserved the validity of the
bond, conceding the payment was made in contravention of the
terms of the contract. *Held*, that the effect of the clause in the
bond was not to enlarge the liability of the sureties because of
the deviation from the terms of the contract, but that the liability
of the sureties stood as if the money had not been paid, and they
were entitled to have the whole twenty per cent. reserved by the
terms of the contract applied in part liquidation of the cost of
completing the work.

On error to the Supreme Court.

For the plaintiff and plaintiff in error, *Black & Drayton.*

For the defendants and defendants in error, *Hudspeth &
Carey.*

The opinion of the court was delivered by

REED, J. This action is against a principal and two sure-
ties. Vassel, the principal, had entered into an agreement

with the town of Guttenberg, by the terms of which Vassel was to grade, flag, curb, pave, sewer, &c., Franklin avenue, in accordance with certain specifications. Vassel was to complete the work by October 1st, 1903. The contract provided, among other things, that if the work, or any part thereof, was unnecessarily delayed, the town could notify Vassel to discontinue the work, and then the town itself could, by contract or otherwise, complete the work. The town gave such notice. Vassel discontinued his work under the contract, and afterward was employed by the town to superintend the completion of the work by the town itself. The cost of the completed work, added to what had been paid Vassel, according to the terms of the contract, is alleged by the town to be in excess of the contract price.

Vassel and the two other defendants, Bernard Foley and William F. Kern, gave to the town a bond conditioned that if Vassel should perform his work, and save the town harmless from all debts, suits, claims, demands, damages and costs, according to the terms of his contract, the obligation to be void.

This action is against Vassel, Foley and Kern upon this bond, alleging the failure of Vassel to keep its conditions.

At the trial it appeared that at the time Vassel, upon notice, discontinued his work under the contract, he had been paid three payments, amounting in all to $3,448. These sums had been paid under the clause in the contract providing that the engineer would from time to time, but not oftener than once a month, make an estimate of the amount of work done, upon which eighty per cent. of such estimated value should be paid to Vassel. The aggregate estimated value contained in the three certificates, the last of which was given September 16th, 1903, was $4,310, eighty per cent. of which was the $3,448 paid, as already mentioned. The remaining twenty per cent. amounted to $862.

After Vassel had discontinued his work as contractor, the town, acting, as it supposed, under a written consent signed by the sureties, Foley and Kern, paid certain creditors for

work done for Vassel, the amount of such payment being $776.20.

The trial court directed a verdict in favor of one of the sureties on the ground that it had not been proved that he had signed the alleged consent, and the jury found in favor of the other surety upon the ground that he had not signed this consent. The result was a verdict in favor of both these defendants.

The theory of the trial court was that if the town paid the $776.20 without the consent of the sureties, the fact of such payment entirely discharged the sureties from their obligations to answer for the conduct of Vassel, the contractor. The judicial ruling was obviously put upon the ground that by the terms of the contract Vassel was to be paid eighty per cent. of the amount of work done, as certified by the engineer from time to time before the completion of the work; that twenty per cent. was to be retained until the work was entirely completed; that the payment of $776.20 in excess of the eighty per cent. of the amount already certified to be due was in violation of the terms of the contract, and so, by force of the rule recognized by the Supreme Court in the case of *Welsh* v. *Hubschmitt Company, 32 Vroom* 57, absolved the sureties from all obligations under their bond.

The contract, the performance of which was guaranteed by the sureties, bargained not only for the retention of the twenty per cent. of the certified amount of work done before completion, but also provided, in case of discontinuance of the work by the contractor, how that twenty per cent. should be used. The contract provided that in the event of such discontinuance the town should proceed to complete the work and to charge the expenses to the contractor, which expenses were to be deducted and paid out of such moneys as might be due or become due to the contractor under the agreement.

It is perceived, therefore, that the twenty per cent. was to be used in finishing the work, and to that extent would relieve the sureties, if applied according to the terms of the contract.

It may be true that under an ordinary bond to secure the

performance by Vassel· of his contract the departure by the town from the terms of the contract would relieve the sureties from further liability, but the contract entered into by these sureties contained the following clause: "It being a further condition of this obligation agreed to by said parties that it shall not be rendered void by reason of any payment made to the contractor in advance or contrary to the terms of the contract, or by reason of any other thing that may be done by the parties in connection with the fulfillment of the said contract."

The purpose of this clause seems entirely clear. It was to establish a rule for the construction of the sureties' contract by the parties themselves. Its effect is equally clear. At law, and indeed in equity, such contracts are construed *strictissimi juris* in favor of the surety—so strictly indeed that any alteration in the contractual obligation indemnified against, even although beneficial to the sureties, will result in their discharge. The clause in question provides that notwithstanding the deviation from the strict terms of the contract, the obligation of the sureties will not be discharged—the bond will not be rendered void. Therefore, assuming that notwithstanding the payment of the sum of $776.20 was a departure from the terms of the contractor's agreement, nevertheless the obligation of the sureties still remains, the question next in sight is, what is the extent of their obligation?

The condition of the bond, as already remarked, was that the contractor should complete his work for a sum, and within the time mentioned in the contract, and save the town harmless from all claims arising out of the execution of the contract. The clause in the bond, while it preserved the validity of that instrument in case there should be a deviation from the conditions in the contractor's agreement, did not extend the liabilities of the sureties beyond that originally assumed, nor make them ·liable for losses resulting from such deviations. There is nothing in the clause to raise the suggestion that the obligations of the sureties were to be enlarged by any payment made in advance or contrary to the terms of the contract, or by reason of any other thing done by the parties

in connection with the fulfillment of the contract. All that the clause bargained for was the continued validity of the bond in case any of these deviations should occur. Its effect was to leave the sureties in the same posture as if none of these things had happened. The town was to be made whole for any loss which they would be compelled to incur in completing the work in accordance with the terms of the original contract.

As already observed, under the contract the twenty per cent. of the amount of certified work done was to be reserved until final payment. The twenty per cent. was so much security in the hands of the town, to be applied to make good any loss arising from the default of the contractor.

Mr. Brandt states the rule to be that "where, by the act of a creditor, a surety has been deprived of the benefit of the fund for the payment of a debt, and the contract by which the surety is bound is not changed, he is only discharged to the extent that he is injured, as in such cases it is the fact that he is injured which entitles him to a discharge. But where he relinquishes the security of the debt, and thereby materially alters the contract, the surety is wholly discharged, whether he is injured or benefited, because in such case it is no longer his contract." *Brandt S. & G.,* § 373.

In this instance, inasmuch as the obligation of the sureties, notwithstanding the change in the contractual relations of the town and the contractor, is preserved by the clause already discussed, the sureties are entitled to the preservation of the security which the contractor's agreement provides for.

In the present case it is to be observed that the twenty per cent. is not to be regarded as an independent security placed in the hands of the town. The real security is the amount of work presumed to be executed and still unpaid for, to the amount of $862. To this extent the work unpaid for diminished the cost of completion *pro tanto.* The securities are entitled to the benefits of this reduction in the cost of completion. What the town would lose by the contractor's default would be any difference between the eighty per cent. paid, together with the reasonable costs of completion, and

what the work would have cost had it been completed by the contractor. This gives the sureties the benefit of the twenty per cent. reservation. If to the cost of completing the work should be added $776 paid to the contractor for work done under his contract, the sureties would lose to that extent the advantage of the twenty per cent. reserved. If, however, the payment of the $776 is entirely ignored, it will not matter whether it was paid for work done under the contract, or in part for work done after the discontinuance of the work by Vassel as contractor. The question will still be, what was the amount reasonably paid for the completion of the work? Then add to it the amount of $3,448, the eighty per cent. paid to the contractor, and if the aggregate of these two sums should not exceed the contract price, the town will be uninjured by Vassel's default. If the aggregate does exceed the contract price, the sureties are liable for the excess.

Upon the assumption, therefore, that the sureties did not sign the consent to the payment of $776, the question should have been submitted to the jury whether the sureties were still liable for any loss under this theory of the scope of their obligations.

The judgment should be reversed, and a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 16.