ISAAC P. VANDERBEEK ET AL., DEFENDANTS IN ERROR. v.    THE TIERNEY-CONNELLY CONSTRUCTION COMPANY ET AL., PLAINTIFFS IN ERROR.

Argued March 18. 1909—Decided June 14. 1909.

1. One who has agreed to indemnify a creditor with respect to a specific debt is not discharged by a mere reduction in the amount demanded of the debtor where such deduction has not resulted from or been accompanied by any alteration in the contractual obligation that was the subject of indemnification.

2. If such reduction, however, has resulted from some act of the creditor under the contract that, without altering its obligation, has deprived the surety of the benefit of the primary fund for the payment of the debt, the surety is released to the extent that he is injured.    In such case it is the fact that he is injured that entitles the surety to his discharge; whereas the alteration of the contract entitles him to be discharged whether he was injured or not.

---

On error to the Supreme Court.

For the plaintiffs in error, *Walter L. McDermott.*

For the defendants in error, *Pierre F. Cook* and *Collins & Corbin.*

The opinion of the court was delivered by

GARRISON, J.    The Tierney-Connelly Construction Company (which we shall call the construction company), having a contract with the board of chosen freeholders of Hudson

county for the construction of the almshouse at Snake Hill, agreed to purchase of Vanderbeek & Sons certain required materials, and, in order to secure the payment of the purchase price, executed and delivered to them a bond with the defendants Connelly and Ross as sureties, the condition of which was as follows:

"Whereas, the said The Tierney & Connelly Construction Company has agreed to purchase from the said Isaac P. Vanderbeek, Stuart M. Vanderbeek and S. Henry Baldwin, partners as aforesaid, certain materials more specifically mentioned and described in the schedule hereto annexed, for the sum or price of eight thousand three hundred and fifty-five dollars and fifty-seven cents, and the said Isaac P. Vanderbeek, Stuart M. Vanderbeek and S. Henry Baldwin, partners as aforesaid, have agreed to sell and deliver to the said The Tierney & Connelly Construction Company at the new county almshouse at Snake Hill, in the county of Hudson aforesaid, said materials for the price aforesaid, the window-frames therein included to be delivered within twenty days from the date hereof; the sash therein included to be delivered on or about June 1st, 1906, if required, and the remainder of said materials, including such sash as shall not be required by said company before June 1st, 1906, to be delivered after June 1st, 1906, or before said last-mentioned date if required by said company, proportionate payments for said materials to be made within sixty days after each delivery thereof.

"Now, the condition of the above obligation is such that if the above bounded, The Tierney & Connelly Construction Company, its successors or assigns, shall and do well and truly pay or cause to be paid unto the said Isaac P. Vanderbeek, Stuart M. Vanderbeek and S. Henry Baldwin, partners as aforesaid, the survivors or survivor of them, or to their executors, administrators or assigns, the full and just sum of eight thousand three hundred and fifty-five dollars and fifty-seven cents, at the times and in the manner aforesaid, then this obligation to be void, otherwise to remain in full force and virtue."

The schedule annexed contains as one of its items "405 set Tabor sash fixtures, attached," which in the written proposal

on which the contract of sale was based was estimated at $1,-012.50.

This item is the main ground of substantial dispute between the parties to the present litigation which was instituted by Vanderbeek & Sons bringing suit on the bond for $3,094.69, which they claimed to be the balance due thereon, whereas the plaintiffs in error claimed that such sum, although unpaid, was a reduction to which they were entitled by reason of the failure of Vanderbeek & Sons to furnish the Tabor sash fixtures attached and the consequent cost to the construction company in obtaining such fixtures directly from the Tabor Sash Company. The sureties also claimed that by reason of the premises they were discharged in law.

The matter thus in dispute arose in this way: The glazed sashes that Vanderbeek & Sons agreed to deliver to the construction company with Tabor sash fixtures attached had to have such fixtures attached by the Tabor people before the sashes were glazed. For this purpose they were sent by Vanderbeek & Sons to the Tabor people, who, because they themselves had a large contract with the construction company for other materials and fixtures, refused to deal with Vanderbeek & Sons, but, nevertheless, attached the required fixtures to the sashes and sent them back to Vanderbeek & Sons, who then glazed them and delivered them on their own trucks to the construction company, who incorporated them in the building with full knowledge of what had occurred, and that the charges of the Tabor company would be made under its contract.

On this state of facts Vanderbeek & Sons claimed that the only deduction from the sum secured by the bond to which the debtor was entitled was the Tabor company's price for four hundred and five sets of its fixtures, viz., $1,012.50, and that the making of such reduction did not operate to discharge the sureties.

Whether such deduction of the amount paid directly by the construction company to the Tabor company would release the sureties if such payment had resulted from a change in the contract between the construction company and Vanderbeek

& Sons need not be decided, for the reason that the case shows conclusively that no change in the contract, and, in fact, no contract at all respecting the matter, was made. On the contrary, the construction company expressly and in writing refused to alter its existing contract or to make any new one. Whatever the construction company did was a matter of complaisance, not of contract. It may be that if the construction company had obligated itself to alter its contract with the Vanderbeeks and to make this payment on their behalf directly to the Tabor concern, such change of contract obligation would discharge the sureties without regard to whether or not they were injured by it, but the mere fact that such payment was made, there being no change in the contract, would discharge the sureties only to the extent they were actually injured by such diversion of the fund that was primarily liable for the contract debt.

In fine, one who has agreed to indemnify a creditor is not discharged by the mere reduction of the amount demanded of the debtor, where such reduction has not resulted from any alteration in the contractual obligation which was the subject of indemnification. The debtor by no act of his can discharge his sureties; some act of the creditor is required to do that. If by some act of his, but without altering the contract indemnified against the creditor, has deprived the surety of the benefit of the primary fund for the payment of the debt, the surety is released only to the extent he is injured. "In such cases," says Mr. Brandt, "it is the fact that he is injured which entitles him to his discharge" (*Brandt S. & G.*, § 373), a statement cited with approval in this court in the case of *Guttenberg* v. *Vassel*, 45 *Vroom* 553. Of the fact of such injury in the present case there is, however, no proof and no suggestion. The law, while zealous that sureties shall not remain bound where changes in their contractual obligation have been made by the principals, will not fabricate such changes where none have, in fact, been made either formally or in legal effect. What actually happened in the present case was that Vanderbeek & Sons, notwithstanding the refusal of the Tabor company to deal with them, performed their contract with the

construction company to the letter by delivering to it the
glazed sashes in the exact condition called for by the schedule
to the bond and then deducted from the indemnified debt the
price of the Tabor fixtures. The legal result of this deduc-
tion, as far as the release of the sureties is concerned, is pre-
cisely the same as if the Tabor company had made Vander-
beek & Sons a present of the fixtures unless the sureties were,
in fact, injured by the circumstance that the price of such
fixtures was paid by the debtor on its Tabor contract instead
of on its Vanderbeek contract, of which there is no sugges-
tion in the testimony. The sureties were not, therefore, dis-
charged by operation of law.

The substantial merits of the controversy developed on the
trial turned not upon any legal rule, but solely on a question
of fact which arose in this way:

The Tabor company, under its contract with the construc-
tion company, in addition to furnishing the fixtures to the
Vanderbeek sashes, furnished many other things called for
by the specifications of the contract of the construction com-
pany with the board of freeholders, including the attachment
of Tabor weather-strips and casement fixtures. These fix-
tures were shown to cost $20 per window, whereas the price
of the sash fixtures called for in the schedule to the bond was
$2.50 per window. The offer of Vanderbeek & Sons to deduct
the price of four hundred and five sets of such fixtures at
$2.50 per set, amounting to $1,012.50, was rejected by the
construction company, which claimed a deduction for what
it had paid the Tabor company for such of its fixtures as were
called for by the specifications, amounting to some $4,000.
This claim involved the question whether the fixtures the
Vanderbeeks had agreed to furnish in the $1,012.50 item
were the same as those for which the construction company
had paid the Tabor company $4,000, and hence ultimately
turned upon whether the "Tabor sash fixtures attached," men-
tioned in the schedule to the bond, were the $2.50 sort, or
whether such term included also the $20 casement fixtures
called for in the specifications of the construction contract.

This was the question that was finally submitted to the jury, and the question to which most of the testimony in the case was addressed. Our examination of the case discloses no error in the charge of the court upon this point or in its rulings upon the admission of testimony respecting it. The brief for the plaintiff in error is directed mainly at the refusal of the court below to nonsuit or to direct a verdict. In as far as this contention rests upon the release of the sureties it has been already covered. The failure of the plaintiffs to set up window-frames and to deliver the glazed sashes upon the precise days mentioned in the recital of the bond should not have led to a nonsuit, in view of the acceptance of such articles under conditions that were mutually satisfactory, and in view of the fact that as to the sash the times mentioned were not of the essence of the contract as is shown by the words "if required," which should be read in the light of the construction company's practical acquiescence in the *modus vivendi* to which the attitude of the Tabor company gave rise. The failure to deliver door-jambs covered with zinc was no ground for a nonsuit, for such was not the contract.

On the whole we discover no ground upon which the trial court should have taken the case from the jury. Finding no error in the charge or in rulings upon evidence the judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J. 15.

*For reversal*—None.